## BLAYLOCK v. HERRINGTON.

4-9672                                   245 S. W. 2d 576

Opinion delivered February 4, 1952.

*J. M. Smallwood,* for appellant.

*Bob Bailey* and *Caviness & George,* for appellee.

GEORGE ROSE SMITH, J. The appellee, Ernestine Brown Herrington, brought this suit in replevin to recover possession of a Chevrolet sedan. It is her contention that her husband wrongfully sold the car, which belonged to her, to Jackson & Lemley, automobile dealers in the city of Russellville. The appellant later bought the car and contends that he thereby acquired title or that the appellee is estopped to assert her title. The

trial court, sitting without a jury, awarded the car to Mrs. Herrington.

There is not much dispute about the facts. Mrs. Herrington, who was then Mrs. Brown, formerly lived in Kentucky and was the owner of the Chevrolet. She joined what she calls a friendship club and in that way met Eljewell Herrington, apparently by correspondence. On April 8, 1950, she drove to Ola, Arkansas, and married Herrington the next day. Two or three days later she returned to Kentucky to get her belongings, and while she was settling her affairs there Eljewell drove to Kentucky in a truck. The truck broke down, and Mrs. Herrington permitted her husband to return alone to Arkansas in her Chevrolet.

On April 21 Eljewell traded the Chevrolet to Jackson & Lemley in part payment upon a Buick car. He had registered the Chevrolet in Arkansas in Mrs. Herrington's name, and he delivered the informal evidence of registration (called a pink slip) to Jackson & Lemley. Two days later Eljewell drove the Buick to Kentucky and brought his wife back to Ola. The formal certificate of title was issued in Mrs. Herrington's name on May 6, but she says that she never saw it. Eljewell forged his wife's indorsement to the certificate and sent the document to Jackson & Lemley. They, having sold the Chevrolet to the appellant, transferred the forged instrument to him. Eljewell absconded with the Buick on May 28 and has not been heard of since.

The appellant urges two grounds for reversal. First, he says that he acquired title to the Chevrolet by the transfer of the formal certificate of title issued under our automobile title registration law. Ark. Stats. 1947, Title 75, Ch. 1. But there is nothing in this statute that purports to make the certificate of title a negotiable instrument or to permit title to be passed by a forged instrument. What the statute does is to make motor vehicle titles and encumbrances a matter of public record, somewhat like the record of real estate deeds and mortgages. A forged deed does not convey title, *Wil-*

*liams* v. *Warren,* 214 Ark. 506, 216 S. W. 2d 879, and this statute does not lay down a different rule as to automobile titles.

Second, it is contended that Mrs. Herrington knew that the Chevrolet had been traded for the Buick, that she accepted the benefit of the exchange, and that she is now estopped to attack the transaction. This reasoning depends upon whether Mrs. Herrington knew about the sale of the Chevrolet. At the trial she attempted to relate what Eljewell had told her about the matter, but the appellant succeeded in keeping this testimony out of the record. She was permitted to say, however, that she had understood that the Chevrolet was in Russellville "subject to my orders." She first said that she learned about the trade when Eljewell came to Kentucky in the Buick, but she later corrected herself to say that she did not learn of the Chevrolet's disposal until after her husband deserted her. She admitted having canceled the insurance on the Chevrolet, as they weren't using it.

Whether Mrs. Herrington knew of the exchange before her husband left her is, on this record, a matter of inference. Had the Herringtons been an average married couple one would naturally suppose that Eljewell told her at once how the Buick was acquired. But when we remember that their courtship was of a day or two's duration, that Herrington forged her name to the certificate of title at a time when she was in Arkansas and could have signed it herself, and that Herrington took the Buick and deserted his bride about a month after they established a home in Arkansas, it is not hard to believe that Herrington concealed the truth as part of a deliberate scheme to defraud his wife. To say the least, the trier of the facts may have taken that view of the case, and it is not our place to say that he was mistaken.

Affirmed.