HELEN MOSS, PLAINTIFF, v. JOHN A. McCRANE MOTORS,
INC., A CORPORATION OF NEW JERSEY, DEFENDANT-
APPELLANT, AND PAUL W. HACKETT AND MARTIN J.
FERBER, DIRECTOR OF THE DIVISION OF MOTOR VE-
HICLES, DEFENDANTS, AND FIRST NATIONAL BANK
IN GARFIELD, DEFENDANT-RESPONDENT.

Argued March 24, 1952—Decided April 28, 1952.

*Mr. John R. Kingsland* argued the cause for the appellant John A. McCrane Motors, Inc.

*Mr. William R. Morrison* argued the cause for the respondent First National Bank in Garfield (*Messrs. Morrison, Lloyd & Griggs,* attorneys).

The opinion of the court was delivered by

JACOBS, J.   This is an appeal, certified to this court on its own motion, from a judgment entered in the Chancery Division, Superior Court.

The plaintiff Helen Moss purchased a De Soto sedan from the defendant John A. McCrane Motors, Inc., for the sum of $2,350.65; the defendant Paul W. Hackett was the salesman in McCrane's employ who handled the transaction.   A deposit of $300 was duly paid and on May 22, 1950, the balance of $2,050.65 was paid in cash to Hackett for transmission to McCrane.   On May 26, 1950, Hackett delivered to McCrane a check in the face amount of $2,050.65 and signed by Marie T. Hackett, his wife.   At that time McCrane turned over to Hackett the manufacturer's statement of origin bearing an assignment to Moss.   As was customary in the trade, Hackett took this statement to an agent of the Division of Motor Vehicles and obtained a certificate of ownership in the name of Moss.   Although the De Soto sedan was delivered to Moss, Hackett failed to deliver the certificate of ownership.   Instead he forged the name of Moss on the blank assignment attached to the certificate, filled in his name as assignee, obtained a new certificate in his own name, and executed a chattel mortgage to the defendant First National Bank in Garfield on the De Soto sedan to secure a loan which he obtained from the bank on May 31, 1950.   The proceeds of this loan were deposited in Mrs. Hackett's account.   Mrs. Hackett's check dated May 26, 1950, was later returned for insufficient funds, but when this was called to Hackett's attention he advised that there was then sufficient money in her account and the check was thereupon certified and redeposited by McCrane on June 2, 1950.

In October, 1950, the plaintiff Moss filed her complaint seeking rescission and return of her purchase price of

$2,350.65 from McCrane because of her inability to obtain clear document of title. This relief was granted by the lower court and no appeal from this action is being pressed by McCrane. The defendant bank sought judgment against McCrane for the amount of its loan to Hackett. This relief was denied by the lower court and no appeal from this action is being pressed by the bank. McCrane sought cancellation of the chattel mortgage held by the bank on the De Soto sedan. The lower court denied this relief on the ground that McCrane's action "in delivering to Hackett the Moss certificate of ownership" made possible the fraud upon the bank, and that as between two innocent parties "the loss must fall upon the one who made that loss possible." See *Moss v. John A. McCrane Motors, Inc.,* 15 *N. J. Super.* 461 *(Ch. Div.* 1951). On the present appeal by McCrane the sole issue is whether this action was erroneous, and although reference has been made to alleged factual matters not embodied in the appendices, we shall confine our determination to the facts and legal points properly presented to us in accordance with *Rule* 1:3.

██ Ordinarily a bank which advances funds in reliance on a forged instrument must bear the loss; this rule is applicable whether the instrument be a promissory note or bill of exchange or a document of title of lesser negotiability. *Russell v. National Bank of Paterson,* 136 *N. J. L.* 270, 277 *(E. & A.* 1947); *Williston, Sales (Rev. ed.* 1948), § 443; *R. S.* 7:2–23; *R. S.* 46:2–2. It is clear that particular circumstances may give rise to an estoppel against the person seeking to assert the forgery, in which event the bank will be protected. *Russell v. National Bank of Paterson, supra.* But it is equally clear that the mere act of entrusting an agent with possession, for proper delivery, of an instrument duly bearing the name of the payee or transferee will not create an estoppel where the agent forges the name of the payee or transferee and turns over the instrument to an innocent purchaser. See *People's Trust Co. v. Smith,* 215 *N. Y.* 488, 109 *N. E.* 561 *(Ct. App.* 1915); *Mitchell v.*

*Porter,* 123 *Cal. App.* 329, 11 *P. 2d* 58 (1932). *Cf. Nelson v. Wolf,* 4 *N. J.* 76 (1950).

■ The criminal act of forgery is generally not to be anticipated (*City of New York v. Bronx County Trust Co.,* 261 *N. Y.* 64, 184 *N. E.* 495 (*Ct. App.* 1933)) and the delivery of a properly completed instrument, not endorsed in blank, to a trusted employee for delivery to the named . payee or transferee appears to bespeak care rather than negligence. In *People's Trust Co. v. Smith, supra,* George F. Stainton delivered a bond and mortgage for safekeeping to his namesake and nephew George F. Stainton. The nephew executed an assignment and delivered the bond and mortgage together with the assignment to the plaintiff trust company as security for a loan. The trial court held that the uncle was estopped from asserting the forgery because of his action in delivering the instrument to a namesake, thus facilitating the wrongdoing. On appeal Judge Cardozo expressed the court's view that the uncle had done nothing to estop himself and had not breached any duty of care "owing to the plaintiff or the public." He pointed out that the uncle had no reason to foresee the wrongdoing and that "faith in the honesty of trusted friends and relatives is seldom negligence."

■■ Applying the foregoing principles it is evident that in the instant matter McCrane's act in delivering the manufacturer's statement of origin duly endorsed to Moss was in nowise negligent and furnished no basis for an estoppel. It was not this act but Hackett's subsequent forgery and misappropriation of the certificate of ownership issued to Moss and the absence of any examination of the car or any inquiries of McCrane or Moss by the bank which proximately resulted in the bank's grant of the loan. The bank advances the suggestion that McCrane was negligent in accepting the Hackett check on May 26, 1950, but we find no adequate basis therefor. The check was delivered to McCrane's office manager, Mrs. Weigele, who inquired why Mrs. Hackett's . check rather than the customer's was being turned over in

payment. Hackett told her that he had received the balance of the purchase price in cash, and that rather than carry it, he had deposited it in his wife's account and she had written her check. Mrs. Weigele accepted this explanation as satisfactory and, disregarding hindsight, we are unable to say she was negligent in so doing. But whether or not it was an adequate explanation, the check furnished no reason for Mrs. Weigele to suspect that there was any likelihood of the forgery and misappropriation of the certificate of ownership and was not proximately related to the bank's loan. *Cf. People's Trust Co. v. Smith, supra; Blue Grass Taxi Garage Co. v. Shepherd,* 304 *Ky.* 390, 200 *S. W. 2d* 936 (*Ct. App.* 1947). By the time the Hackett check was returned for insufficient funds the bank had apparently completed its loan; in any event, there is nothing in the record to support the contrary. Furthermore, the return of the check and its certification and redeposit likewise furnished no reason to anticipate the forgery and misappropriation and were not proximately related to the bank's loan.

The bank urges that since the proceeds of its loan actually went into Mrs. Hackett's account and enabled payment to McCrane of the May 26 check, McCrane should not equitably be permitted to retain the benefits of his agent Hackett's wrongdoing. But in his transaction with the bank Hackett acted solely on his own behalf and not as McCrane's agent, and that much the bank knew. When McCrane accepted and cashed Mrs. Hackett's check it had no knowledge of the forgery and misappropriation or the source of the funds in Mrs. Hackett's account and was entitled to the protection afforded generally to persons who receive negotiable instruments in good faith and for value. See *First Nat. Bank of Springfield v. Di Taranto,* 9 *N. J. Super.* 246, 253 (*App. Div.* 1950). That protection clearly included immunity from attack as to the source of the funds in the drawer's bank account.

For the reasons hereinbefore expressed, we consider that McCrane was entitled to the cancellation of the chattel

mortgage held by the bank and that the various doctrines sought to be invoked by the bank in support of its position to the contrary are inapplicable. Accordingly, that portion of the judgment entered below which dismissed McCrane's cross-claim against the bank is

Reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice WACHENFELD—1.